1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11    JEFFERY SNYDER, MARTIN and BETH          No. 1:15-CV-01892-TLN-KJN
      MELNICK, LIA LOUTHAN, and
12    SUMMERFIELD GARDENS
      CONDOMINIUM, on behalf of themselves
13    and all other similarly situated,

14                    Plaintiffs,                **MEMORANDUM AND ORDER**

15        v.

16    TAMKO BUILDING PRODUCTS, Inc., A
      Missouri Corporation,
17
                      Defendant.
18

19

20           This matter is before the Court pursuant to Defendant TAMKO Building Products, Inc's

21    ("Defendant") partial Motion to Dismiss. (ECF No. 68.) Plaintiffs Jeffery Snyder (hereinafter

22    referred to as "Plaintiff")[1], Beth Melnick, Lia Louthan, and Summerfield Gardens Condominium,

23    oppose the motion. (ECF No. 73.) For the reasons set forth below, the Court GRANTS

24    Defendant's Motion to Dismiss (ECF No. 68) as to Plaintiff Snyder without leave to amend.

25    _____

26    [1]      Plaintiff is the sole California plaintiff named in the proposed nationwide class of entities and individuals
      who allege their properties were clad in Defendant's defective shingles. (ECF No. 36 ¶ 1.) Defendant has moved to
      dismiss all claims asserted by Snyder, Melnick, and Summerfield Gardens, and numerous claims asserted by
27    Louthan. (ECF No. 68.) The basis of venue in this District, however, relies on the presence of Plaintiff, the sole
      California resident among the named plaintiffs. (ECF No. 36 ¶¶ 5–14.) The Court therefore analyzes Plaintiff's
      claims first and—because all of Snyder's claims are dismissed herein—need not and does not decide the Motion as
28    asserted against the other Plaintiffs at this time, as discussed further below.

                                                    1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that in October 2004, a builder installed shingles on the home Plaintiff would eventually purchase in February 2005. (ECF No. 36 ¶ 55.) He further alleges that a contractor told him "his shingles were in very poor condition" in 2013, and that they "worsened" over the next year. (ECF No. 36 ¶¶ 56–57.) Along with all other plaintiffs, Plaintiff broadly alleges that "[i]n addition to damages to their shingles and roofs, Plaintiffs and the Class have also suffered damage to the underlying structures . . . ." (ECF No. 36 ¶ 26.)

More specifically, Plaintiff alleges Defendant's "American Heritage" series of shingles "do not conform to Defendant's express representations and do not conform to applicable building codes or industry standards." (ECF No. 36 ¶ 24.) Plaintiff asserts Defendant marketed its shingles as "durable, reliable and free from defects," but designed and manufactured the shingles with "less than the required amount of asphalt" and failed to adequately test their reliability. (ECF No. 36 ¶¶ 21–25.) According to Plaintiff, Defendant had ample notice of the defects and "knowingly and intentionally concealed" from its customers information about the defects. (ECF No. 36 ¶ 28.) Defendant additionally concealed the fact that it did not intend to follow through on the services provided for in the purported warranties. (ECF No. 36 at ¶ 29.)

Plaintiff alleges Defendant expressly warranted the shingles for a useful life of thirty to fifty years and this warranty "became part of the basis of the bargain" on which Plaintiff relied. (ECF No. 36 ¶ 112.) Plaintiff asserts Defendant made additional express warranties through its catalogs, website, brochures, and marketing materials, and that these additional warranties were made to the "ultimate consumers." (ECF No. 36 ¶¶ 114–15.) Plaintiff ultimately alleges Defendant breached all warranties and failed to perform under their stated terms. (ECF No. 36 ¶ 117.) Additionally, Plaintiff asserts that the warranties are unconscionable and unenforceable because Defendant "denied or failed to pay all costs and damages associated with replacing Plaintiffs' shingles." (ECF No. 36 ¶ 121.) Moreover, Defendant's limited warranty fails of its essential purpose because it warrants that the shingles will last thirty to fifty years when in fact they do not, limits recovery to prorated replacement shingles exclusive of cost of labor, and purports to replace defective shingles with other defective shingles. (ECF No. 36 ¶ 124–26.)

Plaintiff brings claims for breach of express and implied warranties, strict liability, fraud, negligence, and unjust enrichment, as well as claims under California state law products liability. (ECF No. 36.)

## II.    STANDARD OF LAW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

A court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). Rule 8(a) does not require detailed factual allegations, but "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice."). It is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

A claim sounding in fraud requires a heightened pleading standard in which the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Statements of the time, place and nature of the alleged fraudulent activities are sufficient, *id.* at 735, provided the plaintiff sets forth "what is false or misleading about a statement and why it is false," *In re GlenFed, Inc., Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

## III. ANALYSIS

Plaintiff asserts the following causes of action against Defendant: (1) Breach of Express Warranty (First Cause of Action); (2) Breach of the Implied Warranties of Merchantability and Fitness for a Particular Purpose (Second and Third Causes of Action); (3) Strict Liability and Negligence (Fourth through Eighth Causes of Action); (4) Unjust Enrichment (Ninth Cause of Action); (6) Fraudulent Concealment and Negligent Misrepresentation (Tenth and Eleventh Causes of Action); (7) Violation of multiple California Consumer Protection Statutes (Twelfth through Fifteenth Causes of Action); (8) Declaratory Judgment (Twenty-First Cause of Action); and (9) Injunctive Relief (Twenty-Second Cause of Action). Defendant moves to dismiss each, and the Court addresses each in turn below.

### A. Express Warranty

Defendant moves to dismiss Plaintiff's claim for breach of express warranty because (1) Plaintiff does not allege facts establishing Defendant breached an express warranty; (2) Plaintiff did not satisfy the 30-day notice terms of the warranty; (3) Plaintiff does not identify any specific statements contained in marketing materials, nor allege facts showing he relied on any such statements; and (4) Plaintiff lacks privity of contract with Defendant. (ECF No. 68 at 19–22.) Plaintiff argues his express warranty claim should proceed because the warranty (1) fails of its essential purpose; (2) is unconscionable; and (3) does not require privity. Plaintiff also asserts that Defendant created additional warranties through its marketing materials. (ECF No. 73 at 21–27.) The Court first considers Defendant's argument that Plaintiff has failed to sufficiently allege a breach, and—finding that Plaintiff's allegations fall short—turns to Plaintiff's arguments for unenforceability of contract.

#### i. Breach

A manufacturer's liability for breach of an express warranty derives from the terms of the warranty itself. *Grassi v. Int'l Comfort Prods., LLC*, No. 1:15-cv-00253-JAM-JLT, 2015 WL 4879410, *2 (E.D. Cal. Aug. 13, 2015) (quoting *Cipollone v. Ligett Grp., Inc.*, 505 U.S. 504, 525 (1992)).[2] The warranty in this case provides that "TAMKO's obligation is limited to providing

---

[2] Here, Defendant provides a copy of the warranty and the parties do not dispute its authenticity. (ECF Nos.

the owner with a Material Certificate for replacement shingles, … prorated over the life of the limited warranty." (ECF Nos. 68 at 20; 68-1 at 2.) Plaintiff alleges he made a claim in June 2015, replaced the shingles in June 2015, received from Defendant a certificate for a prorated amount of replacement shingles on August 14, 2015, and thereafter refused the offer. (ECF Nos. 36 ¶¶ 58–61; 73 at 18.) Plaintiff may not be happy with the remedy provided, but Plaintiff's refusal to accept that remedy does not constitute a breach by Defendant, where Defendant fulfilled its obligations under the terms of the warranty. *See Grassi*, 2015 WL 4879410 at *3. For this reason, the Court agrees with Defendant that the Amended Complaint fails to sufficiently allege facts that establish a breach of the limited warranty.

### ii.    Essential Purpose

Regardless, Plaintiff contends that he was not limited to the remedy contained in the warranty because the warranty fails of its essential purpose and is unconscionable. (ECF No. 73 at 21.) A limited warranty fails of its essential purpose only if, after multiple attempts, the warrantor fails to repair the defects in a reasonable timeframe. *Oddo v. Arcoaire Air Conditioning & Heating*, No. 8:15-cv-01985-CAS(Ex), 2017 WL 372975, *12 (C.D. Cal. Jan. 24, 2017) (citing *Sumer v. Carrier Corp.*, No. 14-cv-04271-VC, 2015 WL 758314, *1 (N.D. Cal. Feb. 20, 2015)). Plaintiff argues the warranty fails of its essential purpose because allowing Defendant to provide replacement shingles would have been futile, since the replacement shingles would suffer from the same latent defects as the original shingles. (ECF No. 73 at 22) (citing *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014)). Plaintiff cites to *MyFord Touch* to support his position, but in doing so, Plaintiff misses the mark.

*MyFord Touch* does not support Plaintiff's contention that a customer can simply refuse the remedy provided for in a warranty on the belief that such remedy is futile, and then claim breach of warranty under a theory of failure of essential purpose. Contrary to Plaintiff's

68 at 16; 68-1, Exh. 1 at 2–3; 73 at 21.) Plaintiff's amended complaint depends on the warranty (ECF No. 36 ¶¶ 109, 112, 113 ("Pursuant to the express warranty, Defendant is obligated to replace defective shingles or provide monetary relief.")); and Plaintiff does not dispute that the operative warranty is attached to Defendant's Motion as Exhibit 1 (*see* ECF No. 73 at 21 (citing to Def. Br. At 5, 18)). The Court will therefore consider the warranty, Defendant's Exhibit 1. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)) (considering a document not attached to the complaint where contents of the document are alleged therein, and authenticity is not questioned).

understanding of *MyFord Touch*, the court there *dismissed* the breach of express warranty claims of the named plaintiffs who did not bring their cars to Ford for repairs because they believed doing so would be futile. *MyFord Touch*, 46 F. Supp. 3d at 971. The court further provided that the fact that a customer "is not bound by a warranty's limitations of remedy once the warranty has failed of its essential purpose is a different issue from whether a defendant should be given an opportunity to repair or replace before the warranty can be said to have failed of its essential purpose." *Id*. at 970. Moreover, the plaintiffs' contention that the defendant's inability to repair was commonplace and so allowing the defendant the opportunity to repair would be futile was "not adequately supported by the complaint" in which the plaintiffs "simply" pointed to their own experiences, nineteen complaints to the National Highway Transportation Safety Administration, and two websites complaining about My Touch. *Id*. at 971.

Simply put, a plaintiff cannot assert failure of essential purpose where the defendant was not given the opportunity to repair, replace, or adjust the problem. *Id.* Here, Plaintiff alleges he replaced the shingles the same month he filed a claim with Defendant and before Defendant had the opportunity to respond to his warranty claim. On these factual allegations, Plaintiff has not shown he was excused from allowing Defendant the opportunity to repair the shingles, and therefore the express warranty cannot be said to have failed of its essential purpose. *Id.*

### iii.     *Unconscionability*

Similarly, Plaintiff argues the express warranty was unconscionable because TAMKO, and only TAMKO, knew of the shingles' latent defects, withheld that information, and then limited the remedy to replacement with equally defective shingles. (ECF No. 73 at 24.) In California, an allegation of unconscionability requires a showing that the warranty is both procedurally and substantively unconscionable. *Grassi*, 2015 WL 4879410 at *4 (citing *Marchante v. Sony Corp. of Am., Inc.*, 801 F. Supp. 2d 1013, 1022 (S.D. Cal. 2011)). Procedural unconscionability exists when the warranty arises out of oppression or surprise. *Oddo*, 2017 WL 372975 at *10. For a warranty to be substantively unconscionable, the result must be so outrageous as to "shock the conscience of the court. *Id*. at *9 (citing *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 808 (2006)). Broad allegations of procedural unconscionability claiming

a lack of bargaining power or lack of choice are insufficient to state a claim for unconscionability. *Id.*

Plaintiff cites *Armendariz, et al., v. Foundation Health Phychcare Services, Inc.*, 24 Cal. 4th 83, 113 (2000) for the proposition that "[a] contract is procedurally unconscionable if it is a contract of adhesion." (ECF No. 73 at 24–25.) The *Armendariz* court, however, did not create such a hard-line rule. Rather, the court explained that an unconscionability analysis begins with an inquiry into whether the contract is one of adhesion and—if it is—the court must then consider whether other factors are present that would render the contract unenforceable. *Armendariz*, 24 Cal. 4th at 90, 113. In fact, it is not clear "whether a contract of adhesion is inherently oppressive, and therefore automatically procedurally unconscionable, or whether oppression is a separate element that must be present." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006). Moreover, "even though a contract may be adhesive, the existence of 'meaningful' alternatives available to such contracting party in the form of other source of supply tends to defeat any claim of unconscionability." *Smith v. Ford Motor Co.*, 462 F. App'x 660, 663 (9th Cir. 2011) (quoting *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 796-97 (1989)). Plaintiff has not alleged that there were no meaningful alternatives available to him. These questions are nevertheless irrelevant to the present analysis. Even if the Court were to determine that the express warranty here was oppressive—either automatically or otherwise—such that it was procedurally unconscionable, the Court finds Plaintiff has failed to establish any level of the requisite substantive unconscionability that would render the warranty unenforceable.

To that end, the Court finds the warranty here was not substantively unconscionable because the terms of the contract and/or its result are not so outrageously unfair as to "shock the conscience." By way of example, in *Oddo,* the plaintiff argued Arcoaire's warranty was substantively unconscionable because it provided a "new or remanufactured part, at [the defendant's] option, to replace the defective part at no charge for the part," but did not cover materials and labor. *Oddo*, 2017 WL 372975 at *9. The court there found the plaintiff's contention of substantive unconscionability invalid because California law specifically allows sellers to limit the warranty remedies available to buyers. *Id.* at *10 (citing Cal. Com. Code §

2719(1)(a) ("The agreement … may limit or alter the measure of damages recoverable under this division, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts.")). Here, Plaintiff's argument of substantive unconscionability similarly fails because a warranty that limits the buyer's remedy to replacement of a defective part does not shock the Court's conscience. *Id.*

*iv.*     *Privity*

Plaintiff's assertion that express warranty claims do not require privity of contract is similarly misplaced. In support of that position, Plaintiff points to *Coleman v. Boston Sci. Corp.*, No. 1:10-cv-01968-OWW-SKO, 2011 WL 3813173 (E.D. Cal. Aug. 29, 2011), which provides that "privity is not an absolute requirement for express warranties under California law." (ECF No. 72 at 26) (citing *Coleman*, 2011 WL 3813173 at *4). Plaintiff accurately quotes *Coleman*, but has taken it out of context. The court's analysis in *Coleman* actually begins with the premise that "[a]s a general rule, privity of contract is a required element of an express breach of warranty cause of action." *Coleman*, 2011 WL 3813173 at *4. Indeed, exceptions to the privity of contract requirement are only valid under certain circumstances. *Id.* The *Coleman* court continued to state that privity may not be required where a buyer's "reliance on a seller's representations may provide the basis for an express warranty claim even absent privity." *Id.* That is, the privity requirement is waived where the plaintiff can plausibly plead reliance on the manufacturer's written warranties and advertising materials. *Id.*

Here, Plaintiff alleges a builder installed the shingles on a home that Plaintiff purchased months later, and Plaintiff was not aware Defendant manufactured the roofing shingles until ten years after that. (ECF No. 36 ¶¶ 55, 58.) Plaintiff's allegations show he could not have relied on Defendant's written warranty or advertising material in purchasing the product, or in this case, in purchasing his home that contained the shingles. Plaintiff cannot plausibly plead reliance on Defendant's written warranty or advertising and, therefore, is required to show privity of contract to pursue the breach of express warranty claim. He has not done so. Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's breach of express warranty claim.[3]

---

[3]     Because the Court dismisses Plaintiff's breach of express warranty claim for the reasons stated above, the

"A district court may deny a plaintiff leave to amend if it determines that allegations of other facts consistent with the challenged pleading could not possibility cure the deficiency, or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (internal citation omitted). Although a court should freely give leave to amend when justice so requires, "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found.*, 713 F.3d at 520 (quoting *Miller*, 358 F.3d at 622.

Plaintiff has had two opportunities to allege facts sufficient to support his breach of express warranty claim (ECF Nos. 1, 36) and has not done so. Further, it does not appear Plaintiff can cure the deficiencies by alleging additional facts because the issue is not a lack of factual support for Plaintiff's claim, but rather that Plaintiff's factual allegations show his claim is not viable because he cannot allege privity. In other words, the Court finds Plaintiff cannot allege additional facts consistent with the present allegations that would cure the deficiencies identified above. It would therefore be futile to allow further opportunities to amend this claim. Accordingly, dismissal of Plaintiff's claim for breach of express warranty is without leave to amend.

### B. Implied Warranties of Merchantability and Fitness for Purpose

Defendant argues Plaintiff's implied warranty claims fail because (1) Defendant expressly disclaimed the implied warranties; (2) Plaintiff does not allege he experienced problems with the shingles within the warranty period (the first year of purchase); and (3) Plaintiff does not allege privity of contract with Defendant. (ECF No. 68 at 23–24.) For his part, Plaintiff argues that the implied warranty disclaimers are unenforceable because (1) the warranty fails of its essential purpose, as discussed above, and (2) the implied warranty disclaimer is unconscionable. (ECF No. 73 at 28–29.) Plaintiff also argues his claims are timely, and direct privity is not required where a plaintiff is a third-party beneficiary. (ECF No. 73 at 30–31.)

---

Court need not and does not address Defendant's argument that Plaintiff failed to provide notice to Defendant within 30 days of discovering the defects, as required by the warranty.

*i.      Failure of Essential Purpose and Unconscionability*

2    The Court has already addressed Plaintiff's argument that the warranty fails of its essential

3    purpose and does not repeat that discussion here.  Because the Court found the warranty does not

4    fail of its essential purpose, Plaintiff's derivative argument does not render the disclaimers

5    unenforceable.

6    Plaintiff's argument regarding unconscionability is slightly different from that asserted

7    with respect to the express warranty in that Plaintiff asserts that the implied warranty disclaimer

8    itself is unconscionable, presumably apart from the unconscionability of the warranty.  The

9    analysis, however, is the same.  As above, Plaintiff has not alleged facts supporting that the

10   disclaimer or its results "shock the conscience" such that the Court might find substantive

11   unconscionability.

*ii.      Privity*

13   With regard to privity, the parties do not dispute that the rule of privity generally applies

14   to implied warranty claims in California.  Plaintiff, however, argues privity is not required for

15   implied warranty claims brought by third-party beneficiaries under California Commercial Code

16   § 2314.  (ECF No. 73 at 31) (citing *Clark v. LG Elecs. U.S.A., Inc.*, No. 13-cv-485, 2013 WL

17   5816410 (S.D. Cal. Oct. 29, 2013)).  Plaintiff argues that Defendant sold its product through a

18   network of retailers, dealers, and distributors who were not the intended beneficiaries of the

19   warranties.  Instead, because Plaintiff and the class were the ultimate consumers and intended

20   third-party beneficiaries, they may bring implied warranty claims.  (ECF No. 73 at 31.)

21   Defendant on the other hand argues that implied warranty claims generally require privity or an

22   exception to privity, and the third-party beneficiary exception is not recognized by California

23   courts in the consumer warranty context.  (ECF No. 68 at 24.)

24   "Under California Commercial Code section 2314 … a plaintiff asserting breach of

25   warranty claims must stand in vertical contractual privity with the defendant," meaning buyer and

26   seller "are in adjoining links of the distribution chain." *Clemens v. DaimlerChrysler Corp.*, 534

27   F.3d 1017, 1023 (9th Cir. 2008).  Here, Plaintiff alleges Defendant sold its shingles through

28   retailers, dealers, installers, and distributors; a builder installed those shingles on Plaintiffs' home

months before he purchased it; and Plaintiff only discovered years later that Defendant was the manufacturer.  As in *Clemens*, the end consumer "who buys from a retailer is not in privity with a manufacturer."  *Id.*  Indeed, Plaintiff is even a few additional steps away from being in an adjoining link to the manufacturer Defendant in this case.[4]

California district courts are split on the application of the third-party beneficiary exception to the rule of privity.  *Stewart v. Electrolux Home Prod., Inc.*, No. 1:17-cv-01213-LJO-SKO, 304 F. Supp. 3d 894, 914 n.10–11 (E.D. Cal. Jan. 9, 2018) (citing cases).  Plaintiff points to *Clark* as an example of a district court in California applying the exception.  (ECF No. 73 at 31.)  The *Clark* court found a plaintiff in a putative class action who purchased an LG Electronics refrigerator from a "retail seller" was an "intended third-party beneficiary of LG's warranty agreements" and so "the lack of vertical privity [did] not require dismissal of her implied warranty claim under [] section 2314."  *Clark*, 2013 WL 5816410 at *11–*12.  The *Clark* court reasoned the Ninth Circuit did not reject the "third-party beneficiary exception in *Clemens*" because the Ninth Circuit "did not specifically consider the third-party beneficiary exception or cases that have adopted the third-party beneficiary exception."  *Id*. at 12 n.10.

Plaintiff's application of *Clark* is not without merit.[5]  That the Ninth Circuit does not mention or discuss the third-party beneficiary exception in its list of exceptions to the rule of privity, however, is what persuades this Court and others that "*Clemens* forecloses the third-party beneficiary exception to the rule of privity."  *Stewart*, 304 F. Supp. 3d at 915.  *Clemens* "specifically addressed exceptions to privity in the consumer warranty context, but it did not

---

[4]  By way of example, the plaintiff in *Clemens* was a consumer who purchased a Dodge Neon from an independent Dodge dealership.  534 F.3d at 1021.  The Ninth Circuit found the plaintiff lacked privity with the manufacturer, DaimlerChrysler, for an implied warranty claim against it for selling cars with defective head gaskets.  *Id.* at 1023–24.  The Court reasoned "an end consumer such as [the plaintiff] who buys from a retailer is not in privity with the manufacturer."  *Id.* at 1023.  The Court added that "particularized exceptions" exist "when the plaintiff relies on written labels or advertisements of a manufacturer," or "in special cases involving foodstuffs, pesticides, and pharmaceuticals, and where the end user is an employee of the purchaser," but noted those exceptions did not apply to the plaintiff.  *Id.*  The Court added that it declined the "invitation to create a new exception that would permit [the plaintiff's] action to proceed."  *Id.* at 1024–25.

[5]  It is worth noting, however, that *Clark* relies on the California Court of Appeal decision of *Gilbert. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65 (1978), in which a plaintiff sued a subcontractor who had been hired by the general contractor to build a roof for plaintiff, and as such it is factually distinguishable.  *See Stewart*, 304 F. Supp. 3d at 915.

recognize or acknowledge a third-party beneficiary exception." *Id*. The district court in *Stewart* further noted that "there is no published California authority recognizing this exception to privity in the consumer warranty context." *Id*. The *Clemens* court noted that other state courts have split on this question, but added "California courts have painstakingly established the scope of the privity requirement under [] section 2314," and stated it was "not free to create new exceptions to it." 534 F.3d at 1024.

Accordingly, the Court is bound by *Clemens* and DISMISSES without leave to amend for lack of privity Plaintiff's implied warranty claims. *See Stewart*, 304 F. Supp. 3d at 915. The Court, having found a lack of privity and insufficient allegations of unconscionability and failure of purpose, need not and does not address Defendant's additional arguments for dismissal. Defendant's motion to dismiss Plaintiff's claims for implied warranty of merchantability and fitness for purpose is GRANTED.

### C. Strict Liability, Negligence, and Negligent Failure to Warn

Defendant argues California's economic loss rule bars Plaintiff's claims for strict liability, negligence, and negligent failure to warn. (ECF No. 68 at 24.) Plaintiff argues the economic loss rule does not apply because he sufficiently alleges damage to "other property." (ECF No. 73 at 32.) "In California, under the 'economic loss rule,' a manufacturer or distributor may be strictly liable or liable for negligence for injury to property caused by a defective product, but is not liable in tort for purely economic loss." *Stewart*, 304 F. Supp. 3d at 902. A plaintiff can recover in tort when the product defect causes damage to "other property," or in other words, property other than the product itself. *Id*. (citing *Jimenez v. Superior Court*, 29 Cal. 4th 473, 483 (2003)).

In opposition, Plaintiff points to two allegations in the First Amended Complaint he argues refer to damage to property other than the shingles themselves, paragraphs 26 and 61. (ECF No. 73 at 33.) Paragraph 61 reads, "[i]n June 2015, in order to avoid further damage, Snyder was forced to have his defective TAMKO roof replaced at a cost of approximately $12,000, an expense he should not have had to incur for another two decades." (ECF No. 36 ¶ 61.) Plaintiff does not mention any other property in this paragraph. For several paragraphs before, Plaintiff refers only to the shingles, alleging that they were in "very poor condition," that

they were "brittle and dry" and "cracking and curling," and that Defendant sent Plaintiff a certificate for "15 of the 23 squares of shingles needed for [Plaintiff] to reroof his home." (ECF No. 36 ¶¶ 56–60.) Nowhere does Plaintiff mention damage to his home or to items in his home, outside of the damaged shingles. Even drawing reasonable inferences in favor of the non-moving party, there is no basis for the Court to infer that the damage Plaintiff mentions in paragraph 61 refers to any property but the shingles themselves.

Paragraph 26 reads, "[i]n addition to damages to their shingles and roofs, Plaintiffs and the Class have also suffered damage to the underlying structures, including to their real and personal property. The premature failure of Defendant's shingles allows moisture to enter the structures on which they are installed." (ECF No. 36 ¶ 26.) This indeed speaks of damage to other property, but it does not allege damage specifically to Plaintiff's other property. Rather, the complaint names multiple plaintiffs, and the allegations in the complaint support the contention that some suffered this damage, but not that Plaintiff did. A general allegation that some plaintiffs suffered damage to real and personal property is not sufficient to "nudge" Plaintiff's claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680; *see, e.g., NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1029 (E.D. Cal. Jan. 16, 2013) (finding plaintiff's allegations it packaged recalled eggs and non-recalled eggs from other suppliers together, and those packages were destroyed in the recall "plausibly alleged" the destruction of "other property" besides the contracted property of recalled eggs, such as the non-recalled eggs from other suppliers and the packaging materials); *Jimenez*, 29 Cal. 4th at 476, 484 (finding plaintiffs alleged defective windows caused damage to other parts of the home, such as "stucco, insulation, framing, drywall, paint, wall coverings, floor coverings, baseboards, and other parts of the home").

Further, Defendant previously raised this issue and Plaintiff did not take the opportunity to add sufficient allegations in the amended complaint. The original complaint contained the same language in paragraph 25 that "Plaintiffs" suffered damage to "underlying structures." (ECF No. 1 ¶ 25.) In the section of the original complaint with Plaintiff's allegations, paragraph 53 reads, "[i]n June 2015, Snyder had his defective TAMKO roof replaced at a cost of approximately

14

$12,000, an expense he should not have had to incur for another two decades."  In its first motion to dismiss, Defendant argued these two allegations were insufficient to show more than economic loss (ECF No. 25-1 at 16–17), but Plaintiff's only change was to add the phrase "in order to avoid further damage" to paragraph 61.  (ECF No. 36 ¶ 61.)  On the other hand, all other named plaintiffs were able to allege specific damage to specific identifiable property.[6]  (*See* ECF No. 36

---

[6]     The relevant allegations related to the other named plaintiffs are:

65. The Melnicks' shingles have cracked and degranulated, including many areas where all of the shingles' granules have come off. These issues have caused water to leak into the Melnicks' home in at least four distinct places, damaging the home's ceiling and walls.

66. In June 2013, the ceiling in the Melnicks' master bedroom began to crack and peel. This leak has continued to get worse in the time since.

67. In late 2014, the Melnicks noticed water marks on the perimeter wall of the Melnicks' master bedroom.

68. Also in late 2014, a ceiling leak occurred in one of the home's bathrooms.

69. In June 2015, the Melnicks discovered water coming down the wall in the upper level hallway of their home. This leak has caused the paneling on the wall to delaminate and has resulted in mold formation.

70. Additionally, the Melnicks' shingles are now covered with areas of dark mildew and are growing moss.

…

77. Louthan's shingles have cracked, blistered, degranulated, discolored and curled. These issues have caused water to leak into Louthan's home, damaging the home's ceiling, crown molding, walls and floors.

…

82. Summerfield Gardens' shingles have cracked, severely degranulated, curled and come loose. These issues have caused water to leak into several of the Summerfield Gardens homes causing additional damage.

87. In 2015, Summerfield Gardens replaced the roofs on 5029-5031 Castlegate Lane and 5025-5027 Castlegate Lane at a cost of nearly $34,000. Defendant's shingles on both of these buildings had failed causing damage to the roof sheathing and resulting in water entering and damaging the attics of those buildings.

88. The problems with the Summerfield Gardens' shingles will force it to prematurely replace the roofs at its own expense to avoid further damage to the structures. Had Summerfield Gardens' consumer expectations been met, the costs associated with such replacements would not be expected to be incurred for approximately two more decades.

¶¶ 65–70, 77, 82, 87–88.)  Given the clear allegations of the other named plaintiffs compared to the paucity of information presented in Plaintiff's specific allegations, and the tactful avoidance of clarification regarding whether Plaintiff is one of the "Plaintiffs" who suffered damage to "underlying structures," the only reasonable inference the Court can draw is that Plaintiff cannot properly allege damage to other property.[7]  As a result, the economic loss rule bars Plaintiff's claims for strict liability, negligence, and negligent failure to warn.  Defendant's motion to dismiss Plaintiff's Claims Four, Five, Six, Seven, and Eight is GRANTED.  Because Plaintiff has had two opportunities to sufficiently allege damage to other property and has failed to do so, dismissal is without leave to amend.

### D.  Claims Sounding in Fraud

Defendant moves the Court to dismiss Plaintiff's claim for fraudulent concealment because Plaintiff (1) has not adequately alleged a duty to disclose on the part of TAMKO, and (2) has not pleaded the particulars of TAMKO's alleged concealment, as required under Rule 9(b). (ECF No. 68 at 26.)  Relatedly, Defendant moves to dismiss Plaintiff's claims for negligent misrepresentation and Plaintiff's claims brought under California's consumer protection laws (CLRA, UCL, and FAL) because Plaintiff (1) has not plausibly alleged reliance, and (2) has not met the heightened pleading standard of Rule 9(b).  (ECF No. 68 at 29–32.)  In response, Plaintiff argues (1) he has adequately alleged specific facts to state a claim for fraudulent concealment, including a duty to disclose; (2) reliance on Defendant's representations can be inferred; (3) the CLRA, UCL, and FAL claims are held to a reduced pleading standard under Rule 9(b); and (4) the UCL claim alleges an unfair act, and so reliance is not required.  Plaintiff additionally asserts

_____

(ECF No. 36 ¶¶ 65–70, 77, 82, 87–88.)

_____

[7]    Plaintiff cites *Disher v. Tamko Bldg. Prod., Inc.*, No. 14-CV-740-SMY-SCW, 2015 WL 4609980, at *2 (S.D. Ill. July 31, 2015), to support his argument that paragraph 26 sufficiently alleges damage to "other property." (ECF No. 73 at 33.)  The court in *Disher* discussed, in relevant part, whether two named plaintiffs adequately alleged damage by TAMKO shingles to those plaintiffs' other property, and determined both did.  *Disher*, 2015 WL 4609980 at *2, *6.  One of the plaintiffs alleged a risk of "further damage to his home," *id.* at *6 (emphasis added).  The other alleged "Plaintiffs and the Class have also suffered damage to the underlying elements of their structures."  *Id.* at *2. These allegations are parallel to Plaintiff's present allegations, and this Court will not attempt to distinguish them. Nonetheless, *Disher* is an out of circuit district court case, does not cite to binding authority, and does not explain its reasoning.  This Court therefore does not find *Disher* persuasive.

16

that he has pleaded violations of the UCL under the unfair and unlawful prongs as well.  (ECF No. 73 at 47, 54–57.)

                    *i.*      *Federal Rule of Civil Procedure Rule 9(b) – Actual Knowledge.*

Plaintiff's claims of negligent misrepresentation, fraudulent concealment, and violations of the CLRA, UCL, and FAL are each based, generally, on allegations that Defendant made representations or omissions concerning the quality and performance of its shingles that it knew or should have known were false, while concealing the truth about its product.  (*See e.g.*, ECF No. 36 ¶¶ 212, 214, 220, 222, 223, 242, 245, 247, 255, 264.)  Because Plaintiff asserts a unified course of fraudulent conduct, each claim is "grounded in fraud" or "sounds in fraud" and therefore must meet the heightened pleading requirements of Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (claims under CLRA and UCL held to 9(b) standard); *Lawrence v. Wells Fargo Bank, N.A.*, No. 11cv00302-LJO-EPG, 2019 WL 3714774, at *3 (E.D. Cal. Aug. 7, 2019) (claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements); *see also Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1166 (2016) (in California, "[c]auses of action for intentional and negligent misrepresentation sound in fraud....").

Under Rule 9(b), allegations of fraud must be alleged with particularity.  *Stewart*, 304 F. Supp. 3d at 905 (citing *Kearns*, 567 F.3d at 1125).  In the case of fraudulent concealment or omission, it is true that the heightened standard does not necessarily require a plaintiff to allege "the specific time of an omission or the place it occurred" because doing so would generally not be possible.  *Stewart*, 304 F. Supp. 3d at 906.  This distinction, however, does not create a reduced standard as Plaintiff argues, either in the context of fraudulent concealment, or in the context of his claims under the UCL, CLRA, and FAL.  Rather, "a plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of . . . representations that plaintiff relied on . . . ."  *Stewart*, 304 F. Supp. 3d at 907.  As is relevant here, a plaintiff must also specifically allege a defendant's actual knowledge of a product defect in fraud-based claims.  *Id.* at 908–10 (analyzing allegations of actual knowledge in fraudulent concealment claim and claims brought under the

CLRA, UCL, and FAL).  More specifically, for consumer protection-based claims, the plaintiff must "allege how the defendant obtained knowledge of the specific defect prior [to] the plaintiff's purchase of the defective product."  *Id.* at 908 (citing *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012)).  An allegation is deficient if the plaintiff makes only conclusory allegations the defendant had access to defect information or was in a superior position to know of a product defect.  *Id.* at 909 (citing *Wilson*, 668 F.3d at 1147).

In *Stewart*, the plaintiff alleged the defendant—an oven manufacturer—had knowledge of the product defects because the defendant monitored warranty statistics, tracked returns, and checked customer complaints.  *Stewart*, 304 F. Supp. 3d at 910.  The court found that the plaintiff failed to allege that any of the complaints or warranty requests were made directly to defendant and so those complaints were not enough to establish actual knowledge by the defendant.  *Id.* (stating that while allegations of consumer complaint may be sufficient in some cases, the plaintiff failed to allege a connection between the consumer complaint websites and the defendant.)

Here, Plaintiff alleges Defendant had actual knowledge because Defendant "was in a position of superiority to the Plaintiffs and the Class members," knew of warranty claim submissions, and knew or should have known of consumer complaints.  (ECF No. 36 ¶¶ 35, 212.) These allegations are the type of conclusory allegations that that are not sufficient to support the conclusion that Defendant obtained actual knowledge of the specific defect, nor do they come close to establishing that Defendant knew of the defect *prior to* Plaintiff's purchase.  *Stewart*, 304 F. Supp. 3d at 908.  Plaintiff also quotes passages of "frustrated customer postings" from two consumer websites to support his claims.  (ECF No. 36 ¶ 35.)  However, Plaintiff has not alleged any connection between the consumer websites and Defendant.  *Stewart*, 304 F. Supp. 3d at 910. Plaintiff thus does not sufficiently allege Defendant had actual knowledge of the alleged defects prior to Plaintiff's purchase, and his claims of fraudulent concealment, as well as those brought under the UCL, FAL, and CLRA, are therefore DISMISSED.

///

///

*ii.    Actual Reliance*

2           Additionally, Plaintiff has failed to allege that he was exposed to any specific marketing

3    or warranty messages and relied on those messages in purchasing the defective product or, in this

4    case, in purchasing his home.  In order to successfully allege violations under the UCL, FAL, and

5    CLRA, a plaintiff must set forth facts supporting that he was exposed to and actually relied on

6    certain misrepresentations or omissions in purchasing the defective product.  *Bronson v. Johnson*

7    *& Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191, at *2 (N.D. Cal. April 16, 2013).

8    The same is true for a claims of negligent misrepresentation and fraudulent concealment.  *See*

9    *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1046 (N.D. Cal. 2014) (plaintiff must establish

10   detrimental reliance to recover on claim of negligent misrepresentation); *625 3rd Street*

11   *Associates, L.P. v. Alliant Credit Union*, 633 F. Supp. 2d 1040, 1050 (N.D. Cal. 2009) ("claim for

12   fraudulent concealment in California requires knowing concealment or non-disclosure . . . which

13   induces justifiable reliance").  To establish actual reliance, a plaintiff must allege that "the

14   defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-

15   producing conduct."  *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009); *see also Kane v.*

16   *Chobani, Inc.*, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013).

17          Here, Plaintiff does not sufficiently allege reliance on any misrepresentation or omission.

18   Indeed, Plaintiff's allegation concedes that he purchased his home in 2005 and "became aware

19   that the shingles were Defendant's Heritage 30 shingles" in 2015.  (ECF No. 36 ¶¶ 55, 58.)  These

20   allegations do not square with the assertion that Plaintiff relied on Defendant's misrepresentations

21   or omissions when he purchased his home because it reveals Plaintiff became aware of the

22   manufacturer of his home's shingles ten years after he purchased the home.  The Court

23   understands Plaintiff's argument that such an interpretation of the reliance requirement does not

24   account for the realities of the roofing industry—"an industry that contemplates the transferability

25   of its representations to the subsequent owners . . . ."  (ECF No. 73 at 51.)  But Plaintiff cites to

26   no case law in support of its argument, and the Court is aware of none.  Indeed, it seems that

27   absent reliance on a statement or omission, Plaintiff's requested relief would come in the form of

28   a warranty claim, and not one grounded in fraud.  For this additional reason, Plaintiff's claims

based in fraud must be DISMISSED.[8]

*iii.*     *Additional UCL Accusations*

Plaintiff also argues he has stated additional violations under the UCL's unlawful and unfair prongs. (ECF No. 73 at 56.) Plaintiff is correct that "each prong of the UCL comprises a separate and distinct theory of liability." *Kearns*, 567 F.3d at 1127 (citing *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886–87 (1999)). However, if a UCL claim is grounded in fraud, the entire claim must meet the heightened pleading requirement of Rule 9(b). *Id.* Here, Plaintiff's UCL claim sounds in fraud, and so Plaintiff's entire UCL claim must be pleaded with particularity under Rule 9(b). As discussed above, Plaintiff has not met this standard.

Accordingly, the Court GRANTS Defendant's motion to dismiss claims 10, 11, 13, 14, and 15. Because this is Plaintiff's second attempt to sufficiently allege claims sounding in fraud, and because Plaintiff is unable to allege either Defendant's actual knowledge or Plaintiff's reliance on any misrepresentation or omission, dismissal is without leave to amend.

E.     <u>Unjust Enrichment</u>

Defendant seeks dismissal of Plaintiff's claim for unjust enrichment, arguing California does not recognize unjust enrichment as an independent cause of action. (ECF No. 68 at 25.) Plaintiff acknowledges this, but urges the Court to allow the claim to proceed by construing it as a quasi-contract claim seeking restitution. (ECF No. 73 at 41.) Plaintiff further argues that it has properly pleaded unjust enrichment as an alternative to its breach of warranty claim. (ECF No. 73 at 35.) In reply, Defendant asserts that two recent cases (both from the Northern District of California) "have made clear that [such alternate pleading] is not permitted." (ECF No. 76 at 9.)

It is true that California courts have concluded that unjust enrichment is not an independent cause of action, but rather a "theory that permits recovery on other recognized causes of action." *Yujin Robot Inc. v. Synet Elecs. Inc.*, No. CV 14-06237 SJO (ASx), 2015 WL

---

[8]     To the extent Plaintiff contends reliance can be inferred as it pertains to his CLRA, UCL, and FAL claims (ECF No. 73 at 54), these claims are nonetheless dismissed for failure to plead Defendant's actual knowledge of a defect, as explained above.

12781052, at *4 (C.D. Cal., March 16, 2015); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  Courts may, however, construe a cause of action for unjust enrichment as a quasi-contract claim seeking restitution.  *Astiana*, 783 F.3d at 762.  Even so, claims based in quasi-contract may be dismissed where they are "rooted in the same subject matter covered by an express contract."  *Neal v. Select Portfolio Servicing, Inc.*, No. 5:15-cv-03212-EJD, 2016 WL 48124, at *6 (N.D. Cal. 2016).  This is because "an unjust enrichment claim does not lie where the parties have an enforceable express contract."  *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, No. 2:12-cv-02182-KJM-KJN, 2016 WL 829210, at *4 (E.D. Cal. 2016) (quoting *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010)).

Plaintiff seems to argue in opposition that because he alleges the limitations and exclusions of the warranty are unconscionable, the "existence of an enforceable contract is disputed or denied" (ECF No. 73 at 35), and so he can plead unjust enrichment as an alternative to his contract-based claims.  Plaintiff is correct that under the Ninth Circuit's holding in *Astiana*, a restitution claim based on unjust enrichment/quasi-contract may be pleaded as an alternative to a contract-based claim.  *See, e.g., Loop AI Labs Inc. v. Gatti*, No. 15-cv-00798, 2015 WL 5158639, at *6–7 (N.D. Cal. 2015).  Such an alternately-pleaded claim may proceed where a party obtained a benefit by fraud or similar conduct, or where the contract in question is otherwise unenforceable.  At this early stage of litigation, Plaintiff may plead inconsistent causes of action, even though he will be precluded from ultimately recovering under both.  *Oracle Corp. v. SAP AG*, No. C 07-1658 PJH, 2008 WL 5234260, at *9 (N.D. Cal. 2008).

Here, however, the Court has found that Plaintiff has failed to adequately plead that the express warranty and/or the disclaimer are unconscionable or otherwise unenforceable.  Additionally, the Court has found Plaintiff fails to state a cause of action grounded in fraud.  As a result, his unjust enrichment claim pleaded in the alternative necessarily fails.

In addition, there is no dispute that "a claim for unjust enrichment cannot stand alone without a cognizable claim under a quasi-contractual theory or some other form of misconduct."  *Berenblat v. Apple, Inc.*, 2009 WL 2591366, at *6 (N.D. Cal. 2009) (cited in *Smith v. Ford Motor Co.*, 462 F. App'x 660, 665 (9th Cir. 2011)).  Thus, because Plaintiff's claim for unjust

enrichment is premised on the same factual allegations as his other causes of action, it must be dismissed for this additional related reason. *See id.*

### F. Song-Beverly Act

Defendants argue that the operative version of the Song-Beverly Act at the time Plaintiff alleges his shingles were installed in 2004 did not include shingles as a consumer good covered by the Act, and that the current version that includes shingles is not retroactive. (ECF No. 68 at 28). In response, Plaintiffs argue that shingles are consumer goods within the meaning of the current version of the Act, and that Defendants rely upon a case that interprets a prior version of the Act—a case that has been abrogated by the more-recent amendment to the Act. (ECF No. 73.)

The Song-Beverly Act was indeed amended in 2004 to include "goods [that] cannot be serviced or repaired … because of the method of attachment or because the goods have become so affixed to real property to become a part thereof . . . ." Cal. Civ. Code § 1793.2; *see* 2004 Cal. Legis. Serv. Ch. 331 (A.B. 2723) (West) (an act to amend § 1793.2 of the Civil Code, relating to consumer warranties). The amended version became operative on January 1, 2005. *Id.* Code provisions are not retroactive unless expressly so declared, and statutes ordinarily are interpreted as operating prospectively in the absence of a clear indication of contrary legislative intent. *Bank of Am., N.A. v. Roberts*, 217 Cal. App. 4th 1386, 1394 (2013) (citing, *inter alia*, Cal. Civ. Code § 3). "In construing statutes, there is a presumption against retroactive application unless the Legislature plainly has directed otherwise by means of 'express language of retroactivity *or . . . other sources [that] provide a clear and unavoidable implication that the Legislature intended retroactive application.'" *Id.* No declaration of retroactivity appears in the amended version of the Song-Beverly Act, Cal. Civ. Code § 1793.2, and there is otherwise no indication of legislative intent to apply the amendment retroactively.

The parties agree Plaintiff's shingles at issue were installed in 2004 (ECF No. 36 ¶ 55), while the former version of the Song-Beverly Act was operative. Plaintiff's shingles, therefore, were not consumer goods covered by the former version of the Song-Beverly Act. *See Atkinson v. Elk Corp.*, 109 Cal. App. 4th 739 (2003) (finding shingles were not consumer goods within the

version of the Act operative at that time).  Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's Snyder's Song-Beverly Consumer Warranty Act claim.  Because the defect cannot be cured by amendment, the claim is DISMISSED without leave to amend.

### G. Declaratory Relief

Defendant argues the Court should dismiss Plaintiff's declaratory relief claim because declaratory relief is not a claim but rather a remedy, and it therefore requires a plausible underlying case or controversy.   (ECF No. 68 at 32; ECF No. 76 at 26.)  Defendant argues that because all Plaintiff's claims must be dismissed, there is no actual controversy, and his claim for declaratory relief must be dismissed as well.  (ECF No. 68 at 32.)

"An action for declaratory relief requires an actual case or controversy."  *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, at *5 (N.D. Cal. Dec. 17, 2009) (citing *Williams v. Alioto,* 549 F.2d 136, 141 n.4 (9th Cir.1977)).  "[T]he Declaratory Judgment Act 'merely provides an additional remedy in cases where jurisdiction is otherwise established.'"  *Id*. (quoting *Staacke v. U.S. Secretary of Labor,* 841 F.2d 278, 280 (9th Cir.1988)).  As provided above, Plaintiff does not state an independent claim for relief.  Accordingly, Plaintiff's derivative claim for declaratory relief is also DISMISSED without leave to amend.

### H. Injunctive Relief

Similarly, Defendant argues the Court should dismiss Plaintiff's injunctive relief claim because injunctive relief is a remedy, and not a claim.  (ECF No. 68 at 32.)  Plaintiff asserts that a claim for injunctive relief is proper under Federal Rule of Civil Procedure 23.  (ECF No. 73 at 65.)  But nothing in Rule 23 specifically establishes injunctive relief as an independent cause of action.  Rather, Defendant is correct that in California, injunctive relief is a remedy.  *Stewart*, 304 F. Supp. 3d at 911 (citing *City of S. Pasadena v. Dep't of Transp.*, 29 Cal. App. 4th 1280, 1293 (1994)).  Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's claim for injunctive relief without leave to amend.

## IV. VENUE

According to the First Amended Complaint (ECF No. 36), venue is proper in this District under 28 U.S.C. § 1391(b) because (1) a substantial part of the events giving rise to this action

occurred in this District, and (2) a substantial part of the property that is the subject of this action is located in this District.  (ECF No. 36 ¶ 12.)  In light of the Court's ruling, however, this is no longer the case.  Still, while venue may nonetheless be proper in this District pursuant to 28 U.S.C. § 1392(b)(1), a district court may transfer any civil action to any other district where it may have been brought if it finds such transfer to be warranted for the convenience of the parties and witnesses.  28 U.S.C. § 1404(a).  A transfer of venue pursuant to § 1404(a) may be made by motion of either party or by the court *sua sponte*, so long as the parties are first given the opportunity to present their views on the issue.  *Pavao v. Unifund CCR Partners*, 934 F.Supp.2d 1238, 1242 (S.D. Cal. 2013) (citing *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986)).  Because Plaintiff's claims predicated on California law are dismissed by the present order, venue in this district may no longer be convenient for the parties and witnesses.  Hence, the parties are ORDERED to show cause in writing not later than fourteen (14) days from the date of entry of this Order, as to why the action should not be transferred to a more convenient district, and if so, to identify such a district.

## V.    CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Dismiss Plaintiff Snyder's claims, without leave to amend.  The Court defers ruling on Defendants' motion to dismiss as it relates to the other Plaintiffs unless and until it is determined that this Court is the proper venue for the remainder of this action.  As such, Defendants are ordered to re-notice such a motion before this Court, if at all, not later than fourteen (14) days following issuance of an order confirming that venue is proper in this Court.

IT IS SO ORDERED.

Dated: September 30, 2019

_____
Troy L. Nunley
United States District Judge

24